UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KEITH COLLINS,

      Plaintiff,  Case No.

v.  Hon.

FORD MOTOR COMPANY; FORD
MOTOR COMPANY GENERAL
RETIREMENT PLAN

      Defendants.

---

David Nacht (P47034)
NACHTLAW, P.C.
*Attorney for Plaintiff*
101 North Main St., Suite 555
Ann Arbor, MI  48104
(734) 663-7550
dnacht@nachtlaw.com

## COMPLAINT AND DEMAND FOR JURY TRIAL

NOW COMES Plaintiff Keith Collins ("Plaintiff"), by and through his attorneys, NACHT LAW P.C., and brings this action against Ford Motor Company ("Ford") and the Ford Motor Company General Retirement Plan (the "Plan", or, together with Ford, the "Defendants").  In support thereof, Plaintiff hereby states and alleges the following:

## INTRODUCTION

1. This is a civil action brought by Plaintiff, a 30-year employee of Ford and its wholly-owned subsidiaries and a participant in Ford's General Retirement Plan, against Ford and the Plan itself to protect the pension benefits Ford has promised him for over 28 years.

## PARTIES AND JURISDICITION

2. Plaintiff was an employee of Ford and its former wholly owned subsidiary, Geometric Results, Inc. ("GRI"), from April 1989 to December 4, 2020. He worked at GRI from April 1989 to April 29, 1991, and then at Ford from April 29, 1991 to December 4, 2020. He is a "participant" of the Plan, as defined by Section 3(7) of ERISA, 29 U.S.C. § 1002(7), and is entitled to an "accrued benefit" from the Plan, 29 U.S.C. § 1002(23). He currently resides in Oakland County, Michigan, in the Eastern District of Michigan.

3. Defendant Ford is a Delaware Corporation with its principal place of business at 1 American Rd, Dearborn, Michigan.

4. Ford is the "administrator" and "plan sponsor" of the Plan as those terms are defined by Section 3(16) of ERISA. 29 U.S.C. § 1002(16). Upon information and belief, Ford, or its agents, are also the named fiduciar(y/ies) of the Plan as that term is defined by Section 402 of ERISA. 29 U.S.C. § 1102.

5. Defendants and/or Ford enjoy the authority to alter and amend the written instrument for the Plan that is required by Section 402 of ERISA. 29 U.S.C. § 1102. Defendants and/or Ford also have discretion to interpret the provisions of the Plan's written instrument, including provisions relating to the determination of a participant's initial employment date and the number of creditable years of service under the Plan.

6. The Plan is a pension benefit plan within the meaning of ERISA § 3(1). The Plan is a legal entity that can sue and be sued. 29 U.S.C. § 1132(d)(1).

7. This Court has jurisdiction in this matter, pursuant to ERISA § 502(e)(1), (f), 29 U.S.C. § 1132(e)(1), (f), and 28 U.S.C. § 2202.

8. Venue lies in this Court pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2).

## FACTUAL ALLEGATIONS

9. Plaintiff was employed as an Engineering Technologist with GRI from April 1989 through April 29, 1991.

10. Upon information and belief, for this entire period, GRI was a wholly owned subsidiary of Ford.

11. From at least April 1989 to approximately 1997, Ford owned GRI and consistently transferred individuals from its wholly-owned subsidiary, GRI, to Ford.

12. Plaintiff was offered an engineering technologist position at Ford and transferred from GRI on April 29, 1991.

13. Because Plaintiff worked at Ford subsidiary GRI, he was immediately eligible to be a participant in Ford's General Retirement Plan.

14. On April 29, 1991, during his onboarding at Ford, Plaintiff was also assured by Ford HR manager for the engine division Ann Finley that his "Service Date" for the Plan, or the date he started accruing credit for "service years" would be May 31, 1989.

15. In other words, Plaintiff would receive service credit for his time employed at GRI, upon information and belief, at all times relevant a Ford wholly-owned subsidiary.

16. This representation was made to Plaintiff orally and in writing. (Ex. A, General Retirement Plan Subscription to Contributing Membership Form).

17. Ms. Finley specifically told Plaintiff to retain the documents he received during his onboarding, and he diligently did so, for over 28 years.

18. Acting in reliance on Defendants' representations, Plaintiff accepted and continued his employment with Ford for an additional twenty-nine years, seven months, and five days.

19. During this time period, Plaintiff turned down numerous other job opportunities in reliance on Defendants' promise regarding his Service Date.

20. Through the 1990's and 2000's, Plaintiff was approached regarding positions at numerous companies, including Caterpillar, Inc. and multiple automotive suppliers, such as Magna and Cadillac Casting.

21. Some of these position offered greater compensation to Plaintiff in the form of annual salary and bonuses.

22. However, the determinative factor in declining these offers was the pension benefits he would receive under the Plan, based on a Service Date of May 31, 1989.

23. The representations by Defendants made to Plaintiff when he transferred to Ford are representations of material fact, and Defendants either intended they would be acted upon by Plaintiff or were grossly negligent such that the representations amount to constructive fraud. Plaintiff relied upon those representations throughout his career with Ford, and is now faced with the significant detrimental effect of Defendants' false representations.

24. In or about 2018, with approximately 28 years of service, Plaintiff began to look towards retirement.

25. Plaintiff accessed Ford's retirement "portal" and saw for the first time the incorrect Service Date listed. He contacted Ford's National Employee Services Center ("NESC"), to make an informal inquiry and notify Ford his retirement Service Date was inaccurate.

26. For the first time, Ford claimed the service years at GRI would not be counted "per company policy".

27. Then on December 3, 2020, Plaintiff was terminated by Ford.

28. Plaintiff again put in a request with Ford's NESC to calculate his pension and correct what he believed to be a simple administrative error regarding his Service Date.

29. When Ford again claimed the April 29, 1991 Service Date was correct, Plaintiff did not understand why his time at GRI was no longer being credited as promised.

30. Plaintiff thus initiated a claim for benefits on January 29, 2021 to Defendants' Claims and Appeals Management division, generally describing the matters stated in the preceding paragraphs and requesting that his Service Date be returned back to May 31, 1989 as Ford had previously interpreted.

31. Plaintiff received a denial of benefits letter on July 30, 2021, citing the Plan instrument, but the quoted subsection of the Plan instrument did not reflect or

6

support the stated reason for Ford's refusal to credit Plaintiff for his time at GRI.

32. The denial vaguely referenced Ford's "Geometric acquisition rules," but no such rules were cited or provided.

33. Plaintiff initiated an appeal on September 23, 2021 to the Defendants' Claims and Appeals Management division, generally describing the matters stated in the preceding paragraphs and again requesting that his ERISA date be returned to April 1989 as Ford had previously interpreted. He also requested details and information about Defendants' basis for refusing to calculate his service credit to include his time at GRI. Specifically, the appeal requested the following information:

> This Correspondence also constitutes formal written request for access to, and copies of, all documents, records and other information related to this claim, including any documentation reflecting the "Geometrics acquisition rules" referenced in Ford's denial.

34. On December 23, 2021, the Plan Committee (the "Committee") upheld the denial and change of date to April 29, 1991, citing the text of the plan instrument, and, for the first time, an internal Ford memo dated April 11, 1990 from P.T. Zachary, Ford's Manager of "Insurance Programs and Benefits Information" to all "Division Employee Relations Managers". (Ex. B)

35. The memo stated that effective May 1, 1990, Defendants would no longer honor GRI service in calculating service credit, but instead would process all

7

GRI employees who transferred to Ford as "new hires."

36. The memo acknowledged that ERISA required an employee's GRI service to count in determining eligibility for participation in the contributory portion of the Plan, but purported to strip some GRI to Ford transfer employees of service credit for their time at GRI.

37. The memo also stated:

> Because the practice of recognizing GRI service has varied throughout Ford, all GRI employees who were placed on the Company rolls prior to May 1, 1990, directly from the GRI rolls, should be designated as approved transfers from a subsidiary. Under this designation, their Ford Service Date should include the appropriate time worked while employed at GRI. Please ensure that those who were employed by GRI as temporary are given Ford Service Date in accordance with our nonregular (supplemental) employment guidelines.

38. The Committee failed to provide Plaintiff with any explanation for Defendants' prior promise that his Service Date under the Plan was May 31, 1989, as conveyed when he transferred from GRI to Ford. The Committee further failed to provide the information Plaintiff requested in his appeal, including the Plan instrument itself.

39. Plaintiff has exhausted all administrative appeals provided to Plan participants by Defendants, and no other administrative procedures, remedies, or conditions precedent remain to him under the Plan.

## COUNT I
## ACTION UNDER ERISA § 502(a)(1)(B)
### *to Recover Full Benefits*

40. Plaintiff incorporates by reference herein the foregoing paragraphs and allegations.

41. Upon information and belief, GRI was a wholly owned Ford subsidiary at all times relevant to this lawsuit.

42. Defendants' refusal to calculate Plaintiff's service credit to reflect a Service date of May 31, 1989 constitutes a wrongful denial of benefits, and is in direct violation of the terms of the Plan (including as communicated through communications to Plaintiff).

43. The difference in the value of Plaintiff's pension upon retirement based on Ford's wrongful refusal was approximately $604,315.00.

## COUNT II
## ACTION UNDER ERISA § 502(a)(3)
### *to Remedy Breach of Fiduciary Duty*

44. Plaintiff incorporates by reference herein the foregoing paragraphs and allegations.

45. Section 502(a) of ERISA allows participants and beneficiaries to "obtain [] appropriate equitable relief" to enforce the provisions of ERISA and the relevant plan. 29 U.S.C. § 1132(a)(3)(B).

46. Defendants have violated an express provision of ERISA. Defendants are fiduciaries, as defined by 29 U.S.C. § 1002(21), charged with the general duties of loyalty, care, and exclusive purpose to Plan participants. 29 U.S.C. § 1104(a). The Defendants acted as fiduciaries at all times relevant to this complaint.

47. ERISA fiduciaries are further charged with the specific duties to inform participants and to convey complete and accurate information material to them.

48. The duty of loyalty under ERISA requires fiduciaries to speak truthfully to participants, and not to mislead them regarding the plan or benefits under the Plan.

49. Over the course of 29 years, Defendants unequivocally misrepresented to Plaintiff the Service Date with which his pension benefits would be calculated. In doing so, they violated their fiduciary duties to Plaintiff pursuant to Section 404 of ERISA.

50. Defendants further breached its duties to Plaintiff by issuing statements entirely external to the Plan document which were false and misleading.

51. These misrepresentations were material to various decisions Plaintiff made over the course of his employment with Ford, and he reasonably and detrimentally relied on them.

**COUNT III**
**ESTOPPEL**
*(29 U.S.C. § 1132(a)(3))*

52. Plaintiff incorporates by reference herein the foregoing paragraphs and allegations.

53. Section 502(a) of ERISA allows participants and beneficiaries to "obtain [] appropriate equitable relief" to enforce the provisions of ERISA and the relevant plan. 29 U.S.C. § 1132(a)(3)(B).

54. In 1991, Defendants, through Ms. Finley, promised Plaintiff that if he accepted employment with Ford, the company would give him service credit for his employment with GRI in calculating his pension benefits.

55. Defendants later broke that promise, citing to an internal Ford memo from 1990, never communicated to or shared with Plaintiff, and, upon information and belief not communicated to or shared with Plan participants generally.

56. Defendants misrepresented Plaintiff's Service Date to him both orally and in writing.

57. Defendants were either aware that Plaintiff's transfer date was allegedly his correct Service Date under the Plan, or they should have been aware of the alleged correct date.

58. Defendants either intended that Plaintiff rely on and act on these misrepresentations by remaining employed with Ford, or they were so grossly

11

negligent in informing him of his Service Date that the representations amount to constructive fraud.

59. Plaintiff did, in fact, detrimentally rely on Defendants' misrepresentations in remaining employed at Ford and in turning down other, more lucrative job offers. His reliance on the Defendants' confirmation of the May 31, 1989 Service Date caused him to suffer a substantial economic loss in his pension benefits.

60. Plaintiff's reliance on Defendants' misrepresentations was reasonable, as those persons making the statements were either Plan fiduciaries or authorized agents of Plan fiduciaries.

61. Despite his periodic review of materials related to his pension benefits, Plaintiff was completely unaware that May 31, 1989 would not be considered his correct Service Date under the Plan, and completely unaware of the Ford memo, the changes allegedly effected therein never having been included in any Summary Plan Description or other documents provided to Plaintiff over 29 years.

62. To the extent the Plan instrument is unambiguous, the fact that Defendants gave Plaintiff their interpretation of the plan documents as providing for a May 31, 1989 Service Date, and subsequently failed to correct or address this misrepresentation over the course of 29 years is an extraordinary circumstance for

which the balance of equities strongly favors the application of estoppel in Plaintiff's favor.

63. Plaintiff has suffered the damages described herein as a direct and proximate cause of Defendants' breach of their promise to him.

## COUNT IV
## ANTI-CUTBACK VIOLATION
## *(29 U.S.C. § 1054(g))*

64. Plaintiff incorporates by reference herein the foregoing paragraphs and allegations.

65. Section 204(g) of ERISA, the so-called anti-cutback provision, states that the "accrued benefit of a participant under a plan may not be decreased by an amendment of the plan." 29 U.S.C. § 1054(g)(1).

66. A reinterpretation of plan language constitutes an amendment of said plan for the purposes of Section 204(g).

67. Plaintiff's pension benefits that he has earned over the course of his employment with GRI and Ford constitute accrued benefits.

68. Defendants' decision to no longer credit GRI to Ford transfer employees for their Service Years at GRI constitutes a reinterpretation of the Plan.

13

69. Defendants' decision to reinterpret the plan to change Plaintiff's Service Date from May 31, 1989 to April 29, 1991 decreased Plaintiff's pension benefits.

70. The decrease is substantial.

71. Plaintiff estimates that Defendants' reinterpretation of his Service Date has decreased his pension benefit by approximately $604,315.00.

## COUNT V
## REFORMATION
### *(29 U.S.C. § 1132(a)(3))*

72. Plaintiff incorporates by reference herein the foregoing paragraphs and allegations.

73. Reformation is appropriate to hold a plan administrator to what it promised and to remedy false or misleading information supplied by the plan administrator to a participant.

74. Ford, as Plan administrator, provided Plaintiff with materially false information about his retirement benefits.

75. Plaintiff detrimentally relied on that information in accepting and continuing employment at Ford and in declining outside offers of employment, and the false information directly caused Plaintiff's injuries.

14

76. Reformation of the Plan document to provide for GRI to Ford transferees' time at GRI to be counted as service credit fairly and consistently, and therefore for Plaintiff's Service Date to be calculated as May 31, 1989, would remedy the harm suffered by Plaintiff due to Defendants' misrepresentations.

## COUNT VI
### Claim for Penalty Pursuant to ERISA § 502(a)(1)(A), 29 U.S.C. § 1132(a)(1)(A)
(*Defendant Ford Motor Company only*)

77. Plaintiff incorporates by reference herein the foregoing paragraphs and allegations.

78. ERISA § 502(a)(1)(A), 29 U.S.C. § 1132(a)(1)(A), authorizes a claim by a plan beneficiary for the relief provided under ERISA § 502(c), 29 U.S.C. § 1132(c).

79. ERISA § 502(c), 29 U.S.C. § 1132(c), provides that an administrator who fails or refuses to comply with a request for information which such administrator is required by ERISA Title I to furnish to a participant or beneficiary by mailing the material requested to the participant or beneficiary within 30 days after such request may in the Court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 per day from the date of such failure or refusal.

80. Pursuant to 29 C.F.R. § 2575.502c-1, the maximum penalty amount was increased to $110 per day.

81. ERISA § 104(b)(4), 29 U.S.C. § 1024(b)(4), requires that a plan administrator furnish to a beneficiary upon request the instruments pursuant to which the plan is established or maintained.

82. On September 23, 2021 Plaintiff, through counsel, requested **all** plan documents related to his claim.

83. Defendants represented that their decision denying Plaintiff's claim was "based on … the Ford Motor Company General Retirement Plan (the "Plan")."

84. Defendant Ford provided a Summary Plan Description but has failed to provide the Plan itself.

85. To date, Defendant Ford has failed or refused to provide the Plan itself, or other relevant governing documents, as requested by Plaintiff, from October 23, 2021 through the present, a total of 236 days to date.

86. Plaintiff requests this Court award Plaintiff $110 for each day Defendant Ford has failed or refused to produce the instruments pursuant to which the Plan is established or maintained, approximately $25,960.00 to date.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for relief and asks this Court to:

A. Require Defendants to pay all benefit amounts owed to Plaintiff by virtue of Defendants' promissory and statutory obligations to pay;

B. Declare that Plaintiffs' Service Date for purposes of calculating benefits under the Plan was May 31, 1989;

C. Enjoin Defendants to recalculate Plaintiff and his fellow GRI to Ford transferees' pension payments fairly and uniformly to include service credit for their time at GRI;

D. Estop Defendants from calculating Plaintiff's Service date as April 29, 1991;

E. Rescind Defendants' reinterpretation of the Plan as providing for Plaintiff and other post May 1990 GRI to Ford transferees' service credit calculations to not include service credit for their time at GRI;

F. Alternatively, order Defendants to reform the Plan in a manner to allow Plaintiff's Service Date to be May 31, 1989 under the Plan as promised;

G. Award Plaintiff's costs and attorneys' fees in pursuing this action;

H. Award Plaintiff statutory damages under 29 U.S.C. § 1132(c);

I. Award any other relief this Court deems just and proper.

                                              Respectfully submitted,

                                              NACHTLAW, P.C.

/s/ David Nacht
David NAcht (P47034)
Attorney for Plaintiff

Dated: June 16, 2022

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

KEITH COLLINS,

      Plaintiff,                                     Case No.

v.                                                     Hon.

FORD MOTOR COMPANY; FORD
MOTOR COMPANY GENERAL
RETIREMENT PLAN

      Defendants.

---

David Nacht (P47034)
NACHTLAW, P.C.
*Attorney for Plaintiff*
101 North Main St., Suite 555
Ann Arbor, MI 48104
(734) 663-7550
dnacht@nachtlaw.com

## **JURY DEMAND**

NOW COMES Plaintiff Keith Collins by and through his attorneys, NACHT LAW P.C., and hereby demands a trial by jury in the above-captioned matter for all issues so triable.

                                               Respectfully submitted,

                                               NACHTLAW, P.C.

                                               /s/ David Nacht
                                               David NAcht (P47034)

                        Attorney for Plaintiff

Dated: June 16, 2022